# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-50572

United States Court of Appeals
Fifth Circuit

**FILED**

October 15, 2018

Lyle W. Cayce
Clerk

BRANDON LEE MOON,

Plaintiff–Appellant,

v.

CITY OF EL PASO; COUNTY OF EL PASO; SALVADOR OLIVAREZ; DETECTIVE JEFFREY DOVE; ASSISTANT DISTRICT ATTORNEY JOHN DAVIS; EDIE RUBALCABA; GILBERT SANCHEZ,

Defendants–Appellees.

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, ELROD, and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge:

Brandon Lee Moon languished in prison nearly seventeen years for a crime he did not commit. Fortunately—albeit belatedly—post-conviction DNA testing exonerated him. Upon his release, Moon sued various government and law enforcement personnel over his wrongful conviction and imprisonment. In this appeal we need only decide: (1) whether false imprisonment is a "continuing tort" under Texas law (it is), (2) whether Moon's § 1983 due process claim against the County Defendants is time-barred (it is), and (3) whether the assistant district attorney enjoys prosecutorial immunity (he does).

No. 17-50572

The perpetrator of this 1987 sexual assault has never been apprehended. Brandon Moon, however, is undeniably innocent, and he is entitled under Texas law to pursue his false-imprisonment claim.

We AFFIRM in part, REVERSE in part, and REMAND Moon's pendent state tort claim for false imprisonment to the district court.

## I. BACKGROUND

Thirty years ago, Brandon Lee Moon was convicted of aggravated sexual assault. Knowing he was innocent, Moon requested DNA testing, which the trial court ordered. The district attorney's office sent semen and blood samples to Lifecodes, a DNA testing company. Moon's trial counsel also obtained DNA samples from the district clerk's office evidenced by an entry on a "checkout document." Lifecodes's analysis ruled out the possibility that Moon was the source of the DNA. But no airtight *legal* conclusions could be drawn because Lifecodes had no DNA samples from the victim's family for exclusion purposes.[1]

Fast forward to Moon's fourth habeas petition (filed pro se) in 1996. Moon argued that Lifecodes's report entitled him to release. Assistant District Attorney John Davis represented the State of Texas. This round of habeas proceedings revealed that the checkout form, which documented that Moon's attorney checked out DNA evidence from the district clerk's office in 1989, was missing. The clerk's office conducted a three-week search—to no avail. Given the checkout document's absence, Davis successfully pressed a chain-of-custody argument. Moon's habeas petition failed.

---

[1] *See generally Understanding DNA Evidence: A Guide for Victim Service Providers*, OFF. FOR VICTIMS OF CRIME, (Apr. 2001), https://www.ovc.gov/publications/bulletins/dna_4_2001/dna8_4_01.html ("Exclusion does not necessarily mean a suspect is innocent.").

No. 17-50572

The checkout document later turned up. It was in the district clerk's office *the whole time* and was overlooked during the search. According to Moon, the checkout document was critical. Had it been recovered, Davis would not have asserted a chain-of-custody argument. And as Moon sees it, his habeas petition would have surely succeeded.

While Moon's fourth habeas petition was pending, Davis requested additional DNA testing. (Unlike the original testing that followed Moon's conviction, this 1996 round was sought by Davis, not by the court.) The results arrived a few months later, after the habeas petition had been denied. Donna Stanley, a Department of Public Safety criminalist, reported that the DNA evidence excluded Moon as the source of the semen. But as with the earlier Lifecodes analysis, the 1996 results could not conclusively establish Moon's innocence absent reference samples from the victim and her family. So the results helped exculpate (cast doubt) but did not exonerate (clear doubt). Stanley sent the analysis to Davis but not to Moon or to the court. Davis, in turn, did not disclose the results to Moon or seek to obtain follow-up DNA samples that would have confirmed Moon's innocence. Moon remained in prison for eight more years—for a rape he did not commit.

Cue the Innocence Project. In 2004, they acquired the final piece of the scientific puzzle: blood samples from the victim and her family. DNA testing irrefutably proved Moon's innocence and secured his release in December 2004.

Not quite two years later, in October 2006, Moon brought this suit raising § 1983 and state claims. According to Moon, the City of El Paso and two detectives (City Defendants) falsely imprisoned him; officials in the El Paso County District Clerk's office (County Defendants) violated his due process right of access to the courts by overseeing a shambolic office and failing to keep track of the checkout document; and Assistant District Attorney Davis deprived him of due process by making an unfounded chain-of-custody

3

argument during Moon's 1996 habeas proceeding, and failing to inform Moon of the State's separate exculpatory (though not conclusively exonerating) DNA report.

For the next decade, the district court oversaw limited discovery. Eventually, it dismissed (or granted summary judgment against) all of Moon's claims. Moon appealed, challenging only the dismissal of (1) his state false-imprisonment claim against the City Defendants; (2) his § 1983 due process claim against the County Defendants; and (3) his § 1983 due process claim against Assistant District Attorney Davis.

## II. STANDARD OF REVIEW

We review de novo a dismissal under Rule 12(b)(6).[2] In the proceedings below, the parties introduced and used evidence extrinsic to the pleadings, so the district court construed Defendants' motions to dismiss as motions for summary judgment.[3] Our review of a summary-judgment grant is de novo too, applying the same standard as the district court.[4] Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5]

## III. DISCUSSION

**A.    False imprisonment is a "continuing tort" in Texas, and Moon's claim was timely filed.**

Texas's residual two-year statute of limitations governs Moon's false-imprisonment claim.[6] But when did the clock start running: When Moon was

---

[2] *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009).

[3] *See Burns v. Harris Cty. Bail Bond Bd.*, 139 F.3d 513, 517 (5th Cir. 1998) (converting motion to dismiss into a motion for summary judgment after parties submitted many exhibits outside the pleadings).

[4] *Id.*

[5] FED. R. CIV. P. 56(a).

[6] *See* TEX. CIV. PRAC. & REM. CODE § 16.003.

No. 17-50572

imprisoned in 1988 or when he was released in 2004? The district court chose the former, meaning his 2006 claim was time-barred. We disagree.

Because limitations is the sole basis for the district court's dismissal of Moon's false-imprisonment claim, we make an *Erie* prediction whether the Supreme Court of Texas would hold that false imprisonment is a continuing tort.[7] The default accrual rule, as that Court recently reaffirmed, is that "a cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy," and the "fact that damage may continue to occur for an extended period . . . does not prevent limitations from starting to run."[8] On the other hand, added the Court, "We recognize that the continuing-tort doctrine might provide needed protections to plaintiffs in certain situations."[9]

As a formal precedential matter, the Supreme Court of Texas is agnostic: "We have neither endorsed nor addressed the continuing-tort doctrine."[10] And our circuit has no binding precedent on whether the doctrine applies in the false-imprisonment context, although one unpublished opinion concluded that a Texas false-imprisonment claim accrued at the time of imprisonment.[11] Yet multiple Texas intermediate courts *have* weighed in. And they uniformly hold that false imprisonment is a continuing tort that accrues upon the plaintiff's

---

[7] *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010) ("Because the Texas Supreme Court has never ruled on [this issue] . . . we must make an '*Erie* guess' as to how the Texas Supreme Court would rule . . . .").

[8] *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 591 (Tex. 2017) (quoting *Murray v. San Jacinto Agency, Inc.*, 800 S.W.3d 826, 828 (Tex. 1990)).

[9] *Id.* at 593.

[10] *Id.* at 592 (cleaned up).

[11] *Villegas v. Galloway*, 458 F. App'x 334, 338 (5th Cir. 2012) (citing *Wallace v. Kato*, 549 U.S. 384, 389–90 (2007)).

release.[12] The City Defendants cite various cases opposing this proposition.[13] But these cases are distinguishable as they address tolling, a separate issue from accrual. Virtually all treatises support the accrual-upon-release view, consistently stating that false imprisonment is a continuing tort.[14]

Every day behind bars is irreplaceable, with the final day as wrongful as the first. Making our best *Erie* guess, we believe the Supreme Court of Texas would side with the intermediate appellate courts and trusted treatises. False imprisonment is a continuing tort in Texas—the injury persists until the imprisonment ends—meaning Moon's claim accrued upon his release in December 2004. His false-imprisonment claim was thus timely.

## B.   Moon's due process claim against the County Defendants was properly dismissed as time-barred.

Moon contends the County Defendants violated his right of "access to the courts" under the Due Process Clause of the Fourteenth Amendment. He argues that the County Defendants maintained a "system of utter disorganization" that "interfered with and significantly delayed Moon's filing of a meritorious petition for post-conviction relief." Alternatively, Moon argues

---

[12] *E.g.*, *Jim Arnold Corp. v. Bishop*, 928 S.W.2d 761, 766 (Tex. App.—Beaumont 1996, no writ) ("Traditionally, continuing tort theories apply to such causes of action as nuisance, trespass, and false imprisonment."); *Upjohn Co. v. Freeman*, 885 S.W.2d 538, 542 (Tex. App.—Dallas 1994, writ denied) ("The concept of *continuous injury* . . . has been expanded to include false-imprisonment cases."); *Adler v. Beverly Hills Hosp.*, 594 S.W.2d 153, 154 (Tex. App.—Dallas 1980, no writ) ("We hold that false imprisonment is a continuing tort and that the cause of action for the entire period of imprisonment accrues when the detention ends.").

[13] *See Patrick v. Howard*, 904 S.W.2d 941, 944 (Tex. App.—Austin 1995, no writ); *White v. Cole*, 880 S.W.2d 292, 295 (Tex. App.—Beaumont 1994, writ denied).

[14] *See, e.g.*, 20 WILLIAM V. DORSANEO III, TEXAS LITIGATION GUIDE § 331.07; 2 ROY W. MCDONALD & ELAINE A. CARLSON, TEXAS CIVIL PRACTICE § 9:73 (2d ed.); 4 JAMES B. SALES & J. HADLEY EDGAR, TEXAS TORTS & REMEDIES § 51.04; 50 TEX. JUR. 3D *Limitation of Actions* § 70; 7 TEXAS JURISPRUDENCE PLEADING & PRACTICE FORMS § 116:9 (2d ed.); *see also* 32 AM. JUR. 2D *False Imprisonment* § 108.

that the failure to train or supervise subordinate officials in "proper record-keeping methods" violated Moon's right of access to the courts.

We agree with the district court that Moon's access-to-courts claim is time-barred. Because this claim is brought under § 1983, the federal accrual law governs,[15] and the critical inquiry for accrual is "when the plaintiff knows or has reason to know of the injury which is the basis of the action."[16] The conduct Moon complains of—the district clerk's state of "utter disorganization," resulting in the checkout document being lost—occurred in 1996 at the very latest. Moon filed his claim in 2006. Moon was aware of the 1996 events while in prison because testimony during Moon's habeas proceedings revealed that the evidence and checkout document could not be found. The two-year limitations period has long lapsed.

Moon alleges no facts sufficient to toll the pertinent limitations period. Nor does any equitable doctrine toll limitations here. State law generally governs tolling.[17] In Texas, two doctrines, neither applicable in this case, may toll limitations (or delay accrual): fraudulent concealment, or injuries that are both inherently undiscoverable and objectively verifiable.[18] Our review of the record and the governing law leaves us unpersuaded that Moon has satisfied any applicable Texas tolling doctrine or articulated specific facts that warrant extending limitations. We thus hold that Moon's due process claim against the County Defendants is time-barred.

---

[15] *See Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002).

[16] *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993).

[17] *Wallace*, 549 U.S. at 395; *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484–86 (1980).

[18] *See Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015); *Madis v. Edwards*, 347 F. App'x 106, 108–09 (5th Cir. 2009) (listing cases).

No. 17-50572

## C.    Absolute immunity bars Moon's due process claim against the prosecutor.

Assistant District Attorney Davis represented the State of Texas in Moon's fourth habeas proceeding in 1996. Moon claims Davis violated his due process rights under the Fourteenth Amendment by (1) asserting an unfounded chain-of-custody argument in Texas's response to Moon's pro se habeas proceeding, and (2) failing to inform Moon or his counsel of the State's 1996 DNA testing. The district court dismissed the claims against Davis based on absolute immunity. We agree.

Prosecutors enjoy absolute immunity for the initiation and prosecution of a criminal case, including the presentation of a case at trial.[19] If the prosecutor continues his role as an advocate, absolute immunity extends to conduct during post-conviction proceedings.[20] Absolute immunity is not a rigid, formal doctrine, but attaches to the functions a prosecutor performs.[21] Generally, a prosecutor does not enjoy absolute immunity when performing administrative or investigative functions, or when his role as an advocate has concluded.[22] But the broad scope of absolute prosecutorial immunity may even reach an *apparently* administrative or investigative function if that function "require[s] legal knowledge and the exercise of related discretion."[23]

### 1. The Chain-of-Custody Argument

There is no freestanding, substantive due process right to access DNA evidence at the post-conviction stage.[24] State procedures for post-conviction

---

[19] *Imbler v. Pachtman*, 424 U.S. 409, 426 (1976).

[20] *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003); *Carter v. Burch*, 34 F.3d 257, 263 (4th Cir. 1994); *Houston v. Partee*, 978 F.2d 362, 366 (7th Cir. 1992).

[21] *Thompson*, 330 F.3d at 797; *Burch*, 34 F.3d at 261; *Partee*, 978 F.2d at 366.

[22] *Burns v. Reed*, 500 U.S. 478, 486 (1991).

[23] *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).

[24] *Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69 (2009).

DNA testing protect the "limited liberty interest" to which a convicted person may be entitled.[25] So we must ask whether consideration of Moon's claim within Texas's procedures for post-conviction relief "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" or "transgresses any recognized principle of fundamental fairness in operation."[26]

Moon's first claim stems from a legal argument the State made in opposition to Moon's fourth habeas petition. A checkout form showing that evidence was checked out of the district clerk's office in January 1989 was missing in 1996. No actual evidence was missing; only the checkout sheet that provided the custodial link between the district clerk's office and the sheriff's department. Since the checkout document was missing when Davis wrote the State's response to Moon's fourth habeas petition, Davis raised a chain-of-custody argument in the State's brief. Ultimately, the presiding judge denied Moon's petition for a slew of reasons, including *but not limited to* the failure to maintain the integrity of the chain of custody. Davis never saw the missing checkout sheet until August 2007.

When Davis opposed Moon's fourth habeas petition, he did so as a legal advocate for the State of Texas. Because Davis continued that role during post-conviction proceedings, absolute immunity shields him.

### 2. *Failure to Inform of DNA Results*

The second part of Moon's claim against Davis is based on the failure to inform Moon of the State's DNA testing in 1996 after his fourth habeas petition was denied. Moon argues that Davis violated his constitutional rights by failing to obtain additional samples or to inform Moon that additional DNA

---

[25] *Id.* ("When a State chooses to offer help to those seeking relief from convictions, due process does not dictate the exact form such assistance must assume." (cleaned up)).

[26] *Id.* (quoting *Medina v. California*, 505 U.S. 437, 446, 448 (1992)).

testing had been performed. Even though the results of this 1996 DNA test were inconclusive, they were—according to Moon—"exculpatory evidence that cast doubt on Moon's guilt."

Here too, absolute immunity insulates Davis. Moon's fourth habeas petition was still pending when Davis requested the 1996 DNA testing. Thus, he was still acting as counsel for the State of Texas. It does not matter that the results didn't arrive until after the habeas proceeding had concluded. When Davis received the indicative-yet-inconclusive test results, he determined, based on his legal knowledge and experience, that the results were "non-exculpatory." He exercised his discretion by deciding not to pursue the matter any further. Whatever the merits of this decision, Davis is nonetheless immune.

Moon argues that absolute immunity does not apply since the habeas proceeding had ended. But absolute immunity is about more than mere chronology.[27] More legal proceedings followed intermittently until Moon's exoneration nine years later. Moreover, the decision-making process—whether to turn over non-exonerative post-conviction evidence—was precisely the type of prosecutorial function the Supreme Court envisioned in *Van de Kamp*.

\* \* \*

There remains one housekeeping matter: What should happen with Moon's lone remaining claim, his Texas tort claim for false imprisonment? Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction." Whether to refuse, or to retain, supplemental jurisdiction over a pendent state-law claim is committed to a district court's "wide

---

[27] *Cousin v. Small*, 325 F.3d 627, 636 (5th Cir. 2003) (holding that absolute immunity is "functional rather than temporal").

No. 17-50572

discretion"[28]—and we review only for *abuse* of that discretion. For now, we REMAND Moon's false-imprisonment claim to the district court, which will weigh traditional "common law factors of judicial economy, convenience, fairness, and comity."[29]

## IV. CONCLUSION

As for Moon's federal claims, we AFFIRM the district court's dismissal in favor of Davis and the County Defendants. As for Moon's pendent false-imprisonment claim, we REVERSE the district court's dismissal. False imprisonment is a continuing tort under Texas law, meaning Moon's claim was timely filed. We thus REMAND it to the district court for further proceedings.

---

[28] *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993).
[29] *Enochs v. Lampasas Cty.*, 641 F.3d 155, 159 (5th Cir. 2011).

11